The TRAVELERS INSURANCE COM-
PANY, Appellant,

v.

Lovie Oweita WOODARD, Appellee.

No. 512.

Court of Civil Appeals of Texas,
Tyler.

Dec. 10, 1970.

Rehearing Denied Jan. 14, 1971.

Moore & Lipscomb, Hardy Moore, Paris, for appellant.

Elliott & Bass, Clyde Elliott, Jr., Bill Bass, Canton, Smith, Johnson & McDowell, Coy Johnson, Sulphur Springs, M. D. Carlock, Winnsboro, for appellee.

MOORE, Justice.

This is a workmen's compensation case. Appellee, Lovie Oweita Woodard, joined by her husband, Weldon Woodard, brought suit against The Travelers Insurance Company for workmen's compensation benefits under the provisions of the Workmen's Compensation Act, Article 8306, et seq., Vernon's Ann.Tex.Civ.St., alleging that while in the employment of H. D. Lee Manufacturing Company, she sustained an injury to her back resulting in total and permanent disability. Her prayer was for compensation benefits at the rate of $35.00 per week for a period of 401 weeks. Appellant answered with a general denial and in the alternative alleged that her disability was solely caused by arthritis. After a trial before a jury, the trial court rendered judgment upon the verdict, awarding appellee compensation at the rate of $35.00 per week for a total of 401 weeks. From this judgment the insurance company has duly perfected this appeal.

Appellee testified that just before 10:00 o'clock on the morning of June 15, 1967, while working for her employer, H. D. Lee Manufacturing Company, she was engaged in her regular assigned duties of inspecting blue jeans. She testified that the jeans were stacked on dollies which were 3 or 4 feet high tables with metal legs. She described the work as heavy. In moving 2 dollies which were jammed together, she testified that she suffered an injury to her back and experienced severe pain. Her back continued to bother her for the remainder of the day, but she continued to work. The next morning she reported her injury to her employer who sent her to Dr. Swindell in Sulphur Springs. Dr. Swindell diagnosed her ailment as a strained ligament and prescribed a capsule. This was on Thursday she testified, and she went home and went to bed and returned to work the following Monday although she was still experiencing pain. She continued to work until July 1st when she took a two weeks vacation. Shortly after she returned to work from her vacation she testified that she went to see Dr. Stuart of Winnsboro, her regular family doctor, because she was still having pains in her low back and legs. Dr. Stuart referred her to Dr. Shirley, an orthopedic surgeon in Dallas. Dr. Shirley testified that upon physical examination, he found mild to moderate limitation of motion in her lower lumbar spine, associated with a small amount of dyrithmia, indicating some pain; that there was tenderness at the lumbar sacro junction and that the x-rays showed a narrowing of the discs space between the fifth lumbar and first sacro discs; that the x-rays showed disc degeneration or deterioration; that a degenerative condition such as he found may be the result of trauma or the result of normal ageing processes, but if the degenerative condition is a part of trauma, its onset is generally in close proximity to the accident or injury. Appellee was admitted to the hospital in Dallas on September 9, 1967, and shortly thereafter Dr. Shirley at the appellant's expense, operated on her back performing a spinal fusion between the fifth lumbar and first sacro vertebrae. She was discharged on October 11, 1967. According to the testimony of Dr. Shirley, called as a witness by appellant, the operation was a success. He testified that in his opinion appellee would have from 5 to 10% permanent partial disability due to the fact that the spinal fusion results in some stiffness in one segment of the back and the further fact that she would probably have some minor aching from time to time. Dr. Earl T. Stuart testified that in his opinion in all

reasonable medical probability, her total incapacity would be permanent. He further testified that in his opinion appellee's incapacity resulted from an injury and that in all reasonable medical probability the injury aggravated her existing arthritic condition. Appellee testified that she continued to suffer pain in her back, shoulders and legs and that she was generally unable to perform any work.

Other witnesses testified that prior to her injuries, she was active and appeared to be in good physical condition and able to work.

By the first point of error, appellant charges error because of the refusal of the trial court to instruct appellee's counsel not to refer to or discuss the limited nature of the Workmen's Compensation Act, supra. The record shows that appellant's pretrial motion seeking to withhold from the jury knowledge of the limited nature of the act was overruled and appellee's counsel was allowed to read that portion of the prayer which reads as follows:

"* * * that upon final trial of this cause they have judgment against the defendant for workmen's compensation benefits for total permanent disability in a lump sum, being compensation benefits at the rate of $35.00 per week for a period of 401 weeks as allowed by law; * * *"

There is considerable question as to whether the Texas cases support the proposition that the reading to a jury of pleadings such as that with which we are concerned here, constitutes error. Transport Insurance Company v. Nunn, 375 S.W.2d 484 (Tex.Civ.App., Houston, 1964, writ ref., n. r. e.). No decision by the Supreme Court of this state deciding this question has come to our attention. In support of the proposition that the reading of such pleadings constitutes error, appellant relies upon the case of Ex parte Fisher, 146 Tex. 328, 206 S.W.2d 1000 by the Supreme Court. We are unable to see

any similarity between the instant case and that case. Ex parte Fisher was a contempt case. While the Supreme Court, in the course of the opinion, did say that the practice of informing jurors of the legal effect of their answers to special issues was to be condemned, the opinion is no authority for the proposition that the mere reading of the pleadings which tends to inform the jury of the effect of their answers would constitute reversible error.

In Texas Employers Ins. Ass'n v. Poe, 152 Tex. 18, 253 S.W.2d 645, the Court stated:

"* * * It is the better practice not to read to the jury those portions of the pleadings with which the jury is not concerned. * * *"

The same admonition has been repeated by many of the courts of civil appeals. Texas Employers' Insurance Association v. Rigsby, 273 S.W.2d 681, 684 (Tex.Civ. App., Beaumont, 1954, n. w. h.); Texas Employers' Insurance Association v. Logsdon, 278 S.W.2d 893, 897 (Tex.Civ.App., Amarillo, 1954, writ ref., n. r. e.); Transport Insurance Company v. Nunn, supra; Superior Insurance Company v. Sanchez, 428 S.W.2d 718 (Tex.Civ.App., Waco, 1968, writ ref., n. r. e.). Nevertheless all of the foregoing cases seem to hold that the error, if any, in permitting such pleadings to be read to the jury did not constitute reversible error in that such error was not one which would be calculated to cause, and which on the record of the particular case, probably did cause the rendition of an improper judgment. We are inclined to follow the rulings made by those courts. Therefore, our problem here is to determine whether upon the record before us probable harm resulted to appellant by the reading of such pleadings. After careful consideration of the record as a whole, we are not convinced that it can be said that the reading of such pleadings was calculated to cause and probably did cause harm to appellant for the following reasons. In the charge, the trial court instructed the jury not to discuss nor concern them-

selves with the effect of their answers to the various special issues. It is also noted that the special issue inquiring as to how long appellee's incapacity would continue did not require an answer of any number of weeks, as mentioned in the pleadings, but required the jury to answer only whether appellee's disability would be "permanent" or "partial". Moreover insofar as the pleadings may have had the effect of informing the jury as to the limited effect of the workmen's compensation act in dollars and cents, we believe appellant waived this aspect of its complaint by stipulating in the presence of the jury that the insurance company had paid appellee at the rate of $35.00 per week for a total of 48 weeks. In view of the admonition in the court's charge that the size of the judgment to be entered by the court, whether large or small, was not a matter which should have been considered by the jury, and in view of the fact that there is ample evidence in the record to support the jury's finding of permanent disability, we have concluded that it cannot be said that the error, if any, in reading the pleading was calculated to cause harm. Insofar as we have been able to find, there is nothing in the record to demonstrate that the jury was improperly influenced by the reading of such pleading. Consequently, we do not believe there would be any basis for a holding that the alleged error, if any, was one which was calculated to cause, and probably did cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

By the second point, appellant complains of the action of the trial court in refusing to allow counsel to show, by cross-examination of appellee, that at the time she gave her deposition she refused to give blanket authorization to appellant allowing its agents to secure all of her previous medical records and other medical information. Appellant takes the position that this should have been allowed in order to show her good faith and the extent of her disability.

Appellant concedes that there is no decided authority for this proposition. While our rules of procedure provide various methods of discovery, we do not believe there is anything in the rules requiring a party to grant his adversary the right to have access to the files of his doctors and other witnesses, together with the right to interrogate them outside of his presence and hearing. The point appears to be without merit and is accordingly overruled.

Under the sixth point, appellant contends the trial court erred in refusing to strike the testimony of Dr. Stuart, wherein he testified that it was "possible" that the postoperative staphylococcus infection contracted by appellee following her operation aggravated her arthritic condition. The record shows that while in the hospital recovering from her operation appellee developed a staph infection. The record further shows that she had some preexisting arthritic conditions prior to her injury. There is nothing, however, showing that such arthritic condition prevented her from performing her work prior to her injury. While it would have been proper for the trial court to have instructed the jury not to consider such testimony, upon a review of the entire record we fail to see how the failure to do so would be calculated to cause and probably did cause a rendition of an improper judgment. Rule 434, T.R.C.P.

By the ninth point appellant asserts that the trial court erred in rendering judgment on the verdict because the issue of "injury" was not submitted and consequently there is no jury finding that appellee sustained an injury. Appellant argues that the issue of injury constitutes an independent ground of recovery and that even though no objection was made to the charge on that ground, appellee's failure to submit the issue of injury constitutes a waiver of her ground of recovery under Rule 279, T.R.C.P., and as a result the judgment is not supported by the ver-

dict and cannot stand. After careful consideration we find that we are not in accord with this conclusion.

In a suit seeking benefits under the Workmen's Compensation Insurance Act, the claimant has but one ground of recovery and that is upon the policy. The sole ground of recovery, or ultimate issue, is whether or not the claimant is entitled to workmen's compensation benefits under the terms of the policy. The ultimate issue or ground of recovery is made up of several component parts. Among these are in substance the following: (1) the sustaining of accidental injuries, (2) the sustaining of injuries in the course of his employment, (3) the extent of his injuries, (4) the duration of his injuries, (5) the coverage of the injuries by the policy, and (6) the basis for compensation rate. Neither party requested the submission of an issue upon the question of injury nor did appellant make any objection to the court's charge by reason of such omission.

The issue of injury not being within itself an independent ground of recovery, but being merely a component part of the ultimate issue of appellee's right of recovery and portions of such ultimate issue having been submitted, it follows that the trial court was authorized, if there was evidence to sustain his action, to find upon the issue of injury. In view of the fact that the trial court entered judgment for the appellee, it must be presumed that he found that appellee sustained an injury in the course of her employment. As we view the record, there is ample evidence to support such a presumed finding, and therefore the point must be overruled. Texas Employers Ins. Ass'n v. Reed, 150 S.W.2d 858 (Tex.Civ.App., Amarillo, 1941, dismissed, judgment correct), citing Wichita Falls & Oklahoma Ry. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79, and other cases; Rule 279, T.R.C.P.

■ By the twelfth point, appellant complains of the action of the trial court in refusing to grant a new trial because it was shown that upon voir dire examination one of the jurors failed to divulge the fact that he had had a previous claim for workmen's compensation insurance.

At the hearing on motion for new trial, the juror testified that he recalled appellant's counsel having asked the members of the jury panel to raise their hand if any of them had had a claim for compensation. He testified that he raised his hand but did not keep it up except for a short time because he did not believe it necessary to keep his hand raised. Counsel for appellant testified that he did not see the juror raise his hand and had no knowledge of the juror's claim until after verdict; otherwise, he says he would have exercised a peremptory challenge on the juror. It is without dispute that the juror had a previous claim for compensation in 1966 in which the insurance company paid him $128.58.

Appellant argues that these facts show that the juror concealed material facts resulting in injury, and therefore a new trial should have been granted. We cannot agree. As we view the matter, this is not a case of concealment. The juror testified that he raised his hand in response to the question. Counsel for appellant does not dispute this, but merely says that he failed to see him raise his hand. Under these circumstances the record does nothing more than raise a fact question upon the issue of whether or not counsel used due diligence in pursuing the matter. By refusing a new trial, the trial court apparently concluded that counsel waived any right which he may have had to examine the juror. The record as we view it appears to support such finding, and hence we are not authorized to disturb the same. At any rate, however, we do not believe that this incident was of sufficient gravity for us to hold that it was calculated to cause and probably did cause a rendition of an improper judgment. Rule 434, T.R.C.P.

Other points of error, brought forward and ably briefed by counsel for appellant, complain of the ruling of the trial court in

allowing appellee's counsel to propound leading questions; in admitting testimony of the hospital librarian as to drugs administered, and pain suffered by appellee; permitting appellee to testify that she was able to do only manual labor and was discharged by her employer; appellee's weeping during oral argument; and the refusal to grant a new trial because of the cumulative effect of all such alleged errors. Each of said points has been thoroughly examined and found to be without merit. Accordingly, such points are overruled without discussion.

After careful examination of all the evidence in the record, both that in favor of and against the judgment, we find we are unable to agree with appellant's contention that the judgment is so against the great weight and preponderance of the evidence as to be wrong and unjust.

Finding no reversible error, judgment of the trial court is affirmed.